IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2007

**STATE OF TENNESSEE v. TRISHA PLEMMONS**

**Direct Appeal from the Circuit Court for Blount County**
**No. C-13419     D. Kelly Thomas, Jr., Judge**

_____

**No. E2006-01144-CCA-R3-CD - Filed May 31, 2007**

_____

The Defendant, Trisha Plemmons, appeals the revocation of her community corrections sentence. Finding no error on the part of the trial court, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Stacey Nordquist (at hearing), Maryville, Tennessee, and J. Liddell Kirk (on appeal), Knoxville, Tennessee, for the Appellant, Trisha Plemmons.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Mike Flynn, District Attorney General; and Mike Gallegos, Assistant District Attorney General, for the Appellee, the State of Tennessee.

**OPINION**
**I. Facts**

The Defendant pled guilty to facilitation of aggravated robbery in 2001. She received a six year sentence with ninety days in jail, and the remainder was to be served on probation. In 2002, she was found to have violated her probation and was ordered to serve sixty days in jail, followed by a return to probation. In 2004, the Defendant was again found to have violated the conditions of her probation, and she was transferred to community corrections. Finally, in 2006, two community corrections violation warrants were issued alleging the Defendant failed to make court costs payments, failed to abide by her curfew, failed to attend and participate in a treatment program, failed to carry out orders given to her by the East Tennessee Human Resource Agency ("ETHRA"), and failed to obtain the consent of her ETHRA officer before changing residence or employment. Following a hearing, the trial court revoked the Defendant's community corrections sentence and ordered her to serve the remainder of her sentence in confinement. The Defendant appeals this decision.

The following evidence was presented at the community corrections revocation hearing: Lisa Skiles, the Defendant's ETHRA Community Corrections Officer, testified that she called the Defendant on February 24, 2006, for a random drug screen. The person who answered the phone stated that the Defendant was out with friends, and she did not know when the Defendant would return. Skiles stated that if a probationer does not take a drug test when her office calls for a random drug screen it is automatically counted as a positive result. Additionally, because the phone call was made at 10:30 p.m., after the Defendant's 10:00 p.m. curfew, she was in violation of her community corrections contract. Skiles also testified that the Defendant did not pay her court costs and fees on time.

Skiles further testified that the Defendant was admitted into the Agape Halfway House on March 29, 2006, and she left the house on April 8, 2006, after she told the halfway house that her probation officer had given her permission to leave. However, the Defendant did not have any other probation officers besides Skiles, and Skiles denied giving the Defendant permission to leave. Additionally, the Defendant did not keep Skiles apprised of where she was living, also in violation of the conditions of her release. It would additionally be a violation if the Defendant did not alert Skiles to any changes in her employment. Skiles talked with the Defendant on April 10, 2006, to inform her that a warrant was being issued, and, although the Defendant stated she would turn herself in, she never did. Finally, the Defendant never completed a drug and alcohol treatment program, also a violation of her conditions of release.

On cross-examination, Skiles stated she discussed with the Defendant the episode concerning her violation of curfew and her failure to submit to the drug test. She stated that the Defendant told her she actually was at home that night, and she did not know why her mother would say she was not. Skiles admitted all the Defendant's previous drug screens were negative and stated that one of the requirements of treatment at Agape is that the person not work for the first two to three weeks. The Defendant told her that she left Agape because they were going to make her quit her job.

Marcie Pierce, the general manager at the Wendy's where the Defendant worked, testified that the Defendant worked there for approximately six months. Pierce stated that the Defendant was vital to her operations, she worked forty hours a week, was trained to be a shift manager, and she was on her way to assistant manager.

On cross-examination, Pierce testified that she wanted to keep the Defendant on at her Wendy's, but she could not do so while the Defendant was at Agape. The Defendant, however, could have potentially worked at a different location, but that location could only offer her thirty to thirty-five hours a week. Agape required her to have a full-time job, which was therefore impossible with Wendy's. Pierce admitted she could have rehired the Defendant after she completed Agape.

The Defendant's mother, Donna McCullogh, testified that the Defendant was ordered to live with her as a previous condition of her probation. McCullough stated that she and the Defendant

attempted to enroll the Defendant in treatment, but the Defendant preferred outpatient over inpatient treatment because of her children. Two other women lived at McCullough's house at that point, and both of them knew the Defendant was on probation. She said that whoever answered the phone when Skiles called must have not known that the Defendant was actually in bed asleep at that time. The two women did not keep up with the Defendant's schedule because the Defendant sometimes worked nights at Wendy's. On cross-examination, McCullough admitted that a picture, entered into evidence, was of her and the Defendant at a bar and that the Defendant probably drank alcohol the night they were there.

The Defendant testified that the picture shown to her mother was of her on New Year's Eve. Because of this picture, the Defendant was ordered to attend Agape. In March, when Skiles originally called about a random drug test, the Defendant was asleep in her bed at her mother's house because she needed to be at work early the next morning. After she was made aware of the situation, she and Skiles were in contact, and they discussed the situation. A warrant was filed, on which she made bond. She was then instructed to attend a facility for her alcohol and drug treatment. She preferred Cornerstone because it was an outpatient facility, but Skiles required her to attend Agape, an inpatient facility. However, Agape required her to maintain full-time employment, which she could not do at the Wendy's location near Agape. She could not find a suitable place of employment so she left Agape after eleven days. Afterwards, she contacted Skiles, who was very rude, and she attempted to resolve the situation. Skiles stated that a warrant was out for her arrest, and she should turn herself in. The Defendant called the jail for four straight days, but those at the jail said they never received a warrant. So, the Defendant simply determined she would wait for her court date to arrive. Skiles never attempted to contact her after that. The Defendant testified she had not used drugs since August of 2005.

On cross-examination, the Defendant admitted this was her third violation. She admitted she had problems with her previous probation officers and that she had previously tested positive for methamphetamine and marijuana. She has not been recently working; her husband, who works at AJ's bar, took care of her. The Defendant stated that some of her children are currently residing with her ex-mother-in-law, who has custody of them. The Defendant admitted there would be no problems determining who would care for her children if she was incarcerated. The Defendant stated that she did not call back Skiles after their conversation about the warrant because she thought she was being treated unfairly. The Defendant also admitted that it was her decision to leave Agape so she would not lose her job at Wendy's. However, she only worked at Wendy's one day before she felt it was "getting too heated" for her to work there. On re-direct examination, the Defendant stated that she was simply trying to keep her job, a requirement of her conditions of release, when she left Agape. On re-cross examination, the Defendant maintained she did not work at AJ's Bar.

The Defendant's husband, James Caldwell, testified that he worked at AJ's, and there was no Trisha Caldwell who worked there. He was with the Defendant when she called Skiles the three times after she left Agape. Caldwell testified that Skiles acted as though there was no hope of reconciling the situation. On cross-examination, Caldwell stated that he met the Defendant through an acquaintance of his from AJ's. The Defendant felt she was doing the right thing by maintaining

her employment at Wendy's, which was specifically required of her by the trial court.

Lisa Skiles testified on rebuttal that the picture that had been entered into evidence was actually taped to her door in November 2005, before the witnesses testified the episode took place, on New Year's of 2006. Additionally, Skiles did not know the Defendant was married until the Defendant had testified. This was also a violation of her conditions: the Defendant was required to inform Skiles of any marriages.

On cross-examination, Skiles testified that the main problem with Cornerstone treatment for the Defendant was its cost. Skiles did not feel the Defendant could afford the treatment, considering she could not pay her fines or court costs. Additionally, outpatient facilities are generally for people who have already attended inpatient facilities, which the Defendant had not done. Skiles felt Cornerstone was inappropriate for the Defendant, which is why the Defendant was directed to Agape. Skiles did not put much weight on the fact that the Defendant had a steady place of employment because she kept receiving calls placing the Defendant at AJ's and Red's Bar.

On this evidence, the trial court found the Defendant violated the terms and conditions of her community corrections sentence, and it determined the Defendant should not receive another chance at probation. As such, the trial court directed the Defendant to serve her sentence, revoking her community corrections sentence. It is from this decision that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant challenges the trial court's decision to revoke her community corrections sentence, sentencing her to serve the remainder of her original sentence in incarceration. We review revocations of alternative sentences with an abuse of discretion standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In order to establish an abuse of discretion, a defendant must show that there is no substantial evidence to support the finding of the trial court. Id. Tennessee Code Annotated section 40-36-106(e)(4) gives the trial court the power to revoke a defendant's community corrections sentence. That section states:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community based alternative to incarceration.

T.C.A. § 40-36-106(e)(4) (2006). This decision to revoke may be made upon a finding by a mere preponderance of the evidence. T.C.A. § 40-35-311(e) (2006); Harkins, 811 S.W.2d at 82. Additionally, "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82. The decision to revoke probation is within the sound discretion of the

trial court, <u>State v. Kendrick</u>, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005), but a trial court must make a conscientious judgment as to whether the Defendant violated the probation and as to what the appropriate disposition should be, <u>State v. Steven Kelly Fraze</u>, No. M2005-01213-CCA-R3-CD, 2006 WL 618300, at *9 (Tenn. Crim. App., at Nashville, Mar. 13, 2006), *perm. app. denied* (Tenn. Aug. 21, 2006).

In the present case, the Defendant twice violated the terms of her probation, for which she was finally ordered to serve her sentence in a community corrections program. The Behavioral Contract and Conditions of Sentence set out the requirements for Defendant, including:

(1) Curfew at 10:00 p.m.;
(2) "Submit to and complete any and all treatment deemed necessary by the ETHRA Officer;"
(3) "Carry out all orders given by the ETHRA Officer whether oral or written;"
(4) Abstain from using alcohol and drugs;
(5) Submit to random alcohol and drug testing,
(6) Obtain consent of the ETHRA Officer before changing residences; and
(7) Inform ETHRA Officer before getting married.

Additionally, the following special condition was added: "The defendant shall enter and complete an approved treatment program."

The evidence showed that the Defendant admitted drinking on New Year's, of which she informed Skiles, her ETHRA Officer. There was some discrepancy, however, between the photograph, which Skiles claimed was placed on her door before New Year's, and the Defendant's testimony. That discrepancy led to the conclusion that the Defendant had in fact consumed alcohol on at least one more occasion. Further, there was evidence that the Defendant was out past curfew, and she failed to take a random drug test. Furthermore, the Defendant was placed at Agape, which she left after eleven days. There is ample evidence to support the decision of the trial court revoking the Defendant's community corrections sentence and ordering the Defendant to serve the remainder of her sentence incarcerated. Accordingly, we conclude the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

-5-